UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| ANNETTE T. MULARSKI, | ) | Case No. 15-30622-MSH |
| Debtor | ) | |
| | ) | |
| STEVEN WEISS, CHAPTER 7 TRUSTEE, | ) | Adversary Proceeding No. 15-3029 |
| Plaintiff | ) | |
| v. | ) | |
| U.S. BANK, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, | ) | |
| Defendant | ) | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

Before me for determination is a motion to dismiss this adversary proceeding filed by the defendant, U.S. Bank, N.A., as trustee for LSF8 Master Participation Trust. In considering such a motion, I begin by surveying the facts alleged in the complaint and the procedural history of this adversary proceeding.

In July 1999, Annette T. Mularski, the debtor in the main chapter 7 case, purchased real property at 2 Schumikowski Street in Easthampton, Massachusetts. To finance her purchase, Ms. Mularski borrowed funds from Household Finance Corporation II giving Household Finance a note secured by a mortgage on the property. The note and mortgage were subsequently assigned

1

to the defendant, U.S. Bank. When Ms. Mularski defaulted on her mortgage loan, U.S. Bank initiated foreclosure. On April 21, 2015, the bank conducted a foreclosure sale of the Easthampton property by public auction and was the high bidder at the sale with a bid of $168,593.41. The same day, the bank executed a memorandum of sale memorializing the terms of the foreclosure sale. For reasons unknown, a foreclosure deed transferring title to the Easthampton property to the bank was not executed until June 12, 2015, and an affidavit of sale attesting to the sale of the property in compliance with applicable Massachusetts foreclosure law was not executed until June 16, 2015. The foreclosure deed and affidavit were not recorded at the registry of deeds until August 12, 2015, some four months after the foreclosure sale.

Shakespeare observed, "in delay there lies no plenty." *Twelfth Night* II.iii.49. As a result of U.S. Bank's procrastination, when Ms. Mularski filed her bankruptcy petition commencing the main case on July 9, 2015, none of the foreclosure documents (memorandum of sale, foreclosure deed, or affidavit) were recorded at the registry of deeds. Steven Weiss, the chapter 7 trustee of Ms. Mularski's bankruptcy estate, initiated this adversary proceeding against the bank seeking, pursuant to § 544(a) of the Bankruptcy Code, to avoid the transfer of Ms. Mularski's interest in the Easthampton property and, pursuant to § 551, to preserve the avoided transfer for the benefit of the bankruptcy estate.

Relying on his status as a bona fide purchaser under § 544(a)(3) of the Bankruptcy Code, Mr. Weiss maintains that on the bankruptcy filing date he had superior rights in the Easthampton property to those of the bank because the foreclosure deed had not been recorded on that date. According to Mr. Weiss, a bona fide purchaser of the Easthampton property from Ms. Mularski would not be charged with notice of the transfer of Ms. Mularski's interest in the property to the bank by foreclosure, since, under Massachusetts Law, "a conveyance of land shall not be valid

2

against any person without actual notice unless the transfer is recorded." Pl.'s Opp. to M. to Dismiss, at 4, May 19, 2016, ECF No. 18 (quoting *Collins v. Duda (In re Duda)*, 422 B.R. 339, 346 (Bankr. D. Mass. 2010)).

The bank has responded to Mr. Weiss's complaint with its motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b). Claiming the completed foreclosure sale had extinguished any interest of Ms. Mularski in the Easthampton property as of the day of the sale and that Ms. Mularski had no remaining interest in the property as of the commencement of her bankruptcy case, the bank asserts the transfer is not avoidable. The bank also argues that allowing a bankruptcy trustee to set aside a foreclosure sale due to a delay in recording the transfer documents would mean that foreclosing lenders and their buyers would be forced to record foreclosure documents immediately after a sale to protect against an intervening bankruptcy, a result the bank describes as absurd.

In considering the bank's motion to dismiss under Federal Rule 12(b)(6), I must determine only whether the facts alleged in the complaint (substantially all of which are undisputed) are sufficient to demonstrate that Mr. Weiss has a "plausible entitlement to relief." *Sanchez v. Perera-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Section 544(b)(3) of the Bankruptcy Code envelopes a trustee in bankruptcy in the protective cloak of a bona fide purchaser of a debtor's interest in real property, thereby enabling a trustee to avoid a transfer of such interest to the extent the transfer could have been avoided by a bona fide purchaser under state law. 11 U.S.C. § 544(b)(3).[1] Put another way:

---

[1] Section 544(a)(3) provides:

> (a)    The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by --

3

> To be good against the trustee, a transfer of an interest in the debtor's real property must be so far perfected as to be effective against a bona fide purchaser of that real estate from the debtor under nonbankruptcy law. . . . For a transfer of an interest in the debtor's real property, . . . § 544(a) asks, in effect:
>
> Suppose the debtor, instead of filing bankruptcy, had transferred the same real property to a bona fide purchaser for value who knew nothing of the claimant's asserted interest in the debtor's real estate. Between the claimant and the bona fide purchaser, who would have prevailed under state law?

Ginsberg & Martin on Bankruptcy, § 9.01 (Westlaw 2016); *see also Abboud v. The Ground Round, Inc.*, 482 F.3d 15, 20 (1st Cir. 2007) (while the Bankruptcy Code gives the trustee the status of a bona fide purchaser, the "rights and powers" of that bona fide purchaser are generally determined by applicable state law).

In Massachusetts, "a conveyance of an estate in land is not valid against any person unless the transfer is recorded or unless that person has 'actual notice' of the unrecorded conveyance. M.G.L. c. 183 § 4. . . . '[P]urchasers should not be required to look beyond the registry of deeds further than is absolutely necessary.' *Swasey v. Emerson*, 168 Mass. 118, 120, 46 N.E. 426 (1897) [Homes, J.]." *Clark v. Kahn (In re Dlott)*, 43 B.R. 789, 793-94 (Bankr. D. Mass. 1983). In contrast to other states, Massachusetts law does not charge bona fide purchasers with "inquiry" notice of matters not on record. *Dwyer v. Rockland Trust Co. (In re Mammola)*, 474 B.R. 23, 31 (Bankr. D. Mass. 2012) (citing *Gray v. Burke (In re Coletta Bros. of N. Quincy, Inc.)*, 172 B.R. 159, 163 (Bankr. D. Mass. 1994)) (Massachusetts law does not charge a bona fide purchaser with inquiry

---

. . .

    (3)    a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

4

notice; this "species of actual notice . . . does not bind the trustee.").

Trustees in bankruptcy are not charged, by the explicit language of § 544(a), with actual notice of an unrecorded transfer. The upshot is that a bankruptcy trustee in a case where Massachusetts law applies is charged only with "constructive" notice, i.e., notice of "any information which . . . an examination of the instruments in his chain of title would have revealed." *Agin v. JPMorgan Chase Bank, N.A. (In re Adams)*, 462 B.R. 1, 5 (Bankr. D. Mass. 2011) (quoting *Colonial Bank & Trust Co. v. Sheehan*, 357 Mass. 239, 242, 258 N.E. 2d 306 (1970)); *see also Weiss v. JPMorgan Chase Bank, N.A. (In re Thibault)*, 518 B.R. 698, 702 (Bankr. D. Mass. 2014) (quoting *Collins v. Bank of New England-West, N.A. (In re Daylight Dairy Prods., Inc.)*, 125 B.R. 1, 3 (Bankr. D. Mass. 1991)) (Trustee is "subject to any constructive knowledge imposed upon creditors and purchasers under applicable state law."); *Baldiga v. Golemo (In re Golemo)*, 494 B.R. 588, 593 (Bankr. D. Mass. 2013) (quoting *Stern v. Continental Assurance Co. (In re Ryan)*, 851 F. 2d 502, 506-507 (1st Cir. 1988)) ("[C]onstructive notice is a positive rule of state law that permits the prior purchaser to gain priority over a latter purchaser, regardless of whether the latter purchaser really knows of the prior purchase . . . if a deed is properly recorded, all future purchasers have constructive notice of the deed.").

Massachusetts subscribes to the title theory of mortgages. *Bevilacqua v. Rodriguez*, 460 Mass. 762, 773, 955 N.E. 2d 884 (2011). In title theory jurisdictions a mortgage is a transfer of legal title in a property to secure a debt:

> In Massachusetts, a mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains. . . . The title held by a mortgagee is defeasible, and upon payment of the note by the mortgagor . . . the mortgagee's interest in the real property comes to an end.

*Id.* at 774 (internal citations and quotation marks omitted). "Inherent in this concept of the mortgagee's defeasible title is the mortgagor's equity of redemption," *id.*, the right to redeem legal

title from the mortgage holder upon payment in full.

A mortgagor's equity of redemption is "regarded as an estate," under Massachusetts law, *White v. Whitney*, 44 Mass. 81, 84 (1841); it is an interest in real property that may be assigned, conveyed by deed, and levied upon. *See Whitney*, 44 Mass. at 84; *Drinan v. Nichols*, 115 Mass. 353, 356 (1874); *Bigelow v. Willson*, 18 Mass. 485, 500 (1823); *Fales v. Glass*, 402 N.E.2d 1100, 1103 (Mass. App. Ct. 1980). And the termination of a debtor's equity of redemption is explicitly recognized as a "transfer" under the Bankruptcy Code. *See* 11 U.S.C. § 101(54)(C) ("The term "transfer" means . . . (C) the foreclosure of a debtor's equity of redemption.").

Since U.S. Bank's foreclosure sale foreclosed Ms. Mularski's equity of redemption in the Easthampton property, it effected a "transfer of property of the debtor." 11 U.S.C. § 544. To the extent that transfer may have been subject to the rights of a bona fide purchaser on the date of Ms. Mularski's bankruptcy filing, the transfer may be avoidable under § 544(a)(3).

But a trustee cannot acquire "any greater rights than he, or any person, would have as a bona fide purchaser or lien creditor under state law." *Perrino v. BAC Home Loans Servicing, LP (In re Trask)*, 462 B.R. 268, 273 (1st Cir. BAP 2011). Ms. Mularski never held legal title to the property – legal title remained at all times in the bank as mortgagee. Owing to the valid mortgage on record, the most a purchaser of the Easthampton property from Ms. Mularski could have acquired was her equity of redemption as the mortgagor. *See Marshall v. Francis*, 332 Mass. 282, 284, 124 N.E.2d 803 (1955). As between the debtor as mortgagor and the bank as mortgagee, the foreclosure sale effected a transfer of the debtor's equitable title in the property to the bank. Transfer of *legal title*, however, occurred only between the bank as seller (under the mortgage's power of sale) and the bank as purchaser. As to *that* transfer Ms. Mularski was a stranger. Therefore, contrary to Mr. Weiss's assertions, the foreclosure sale did not constitute a "transfer of

6

title" from the Ms. Mularski to the bank in the colloquial sense of transferring full legal title. *See* Complaint, at 3 ¶ 19, 4 ¶ 22 (alleging that Bank "acquired title" through memorandum of sale or foreclosure deed). Thus, while Mr. Weiss can attempt to avoid the transfer of Ms. Mularski's equity of redemption, he would have no ability to recover legal title to the Easthampton property.

Neither party has cited, nor have I located, any Massachusetts decisional authority dealing with the issue of whether a bona fide purchaser of an equity of redemption takes title subject to or free and clear of a prior, but unrecorded, transfer of the equity of redemption through foreclosure. As indicated previously, however, Massachusetts law is clear that a conveyance of an interest in real property must be evidenced by a recording at the relevant registry of deeds in order to be effective against third parties. M.G.L. ch. 183, § 4. In other jurisdictions where this type of constructive notice through recordation is required with respect to real property transfers, courts have held that a transfer of a debtor's interest in property through a foreclosure sale is avoidable if, at the time of the bankruptcy filing, the foreclosure documents had not been recorded. *See, e.g.*, *In re Elam*, 194 B.R. 412, 416 (Bankr. E.D. Tex. 1996) (transfer of debtor's equity of redemption through foreclosure sale avoidable under 544(a)(3) where foreclosure sale occurred prepetition, but foreclosure deed was not recorded at the time of the bankruptcy filing); *Smith v. Mooney (In re Smith)*, 155 B.R. 145, 148-49 (Bankr. S.D.W.V. 1993) (same); *Little v. Duncombe (In re Duncombe)*, 143 B.R. 243, 245 (Bankr. C.D. Cal. 1992) (same).

While some decisions reach a contrary result, they do so in reliance on applicable state law that (unlike Massachusetts law) charges bona fide purchasers with *inquiry* notice. Thus other documents of record, such as recorded deeds of trust (mortgages), notices of default, and published notices of sale, have been deemed sufficient to impose upon a subsequent purchaser the duty to inquire as to the status of the property, which inquiry would have lead the purchaser to discover

7

the prior foreclosure. *See, e.g.*, *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 299 (5th Cir. 1997) ("Under Texas law, constructive notice of a recorded deed of trust in the chain of title puts a subsequent purchaser under a duty to make a reasonable inquiry into the status of the deed of trust."); *In re Zubenko*, 528 B.R. 784, 788-89 (Bankr. E.D. Cal. 2015) (under California law, recorded notice of default and notice of sale were sufficient to charge purchaser with inquiry notice); *Gillman v. Preston Family Inv. Co. (In re Richardson)*, 23 B.R. 434, 440 (Bankr. D. Utah 1982) (recorded notice of default and publication of sale notice imposed upon potential purchasers a duty to inquire into property status).

Massachusetts law, however, does not charge bona fide purchasers with inquiry notice. *Dlott*, 43 B.R. at 794. Accordingly, because no documents on record at the registry of deeds indicated that Ms. Mularski's interest in the Easthampton property (i.e., the equity of redemption) had been transferred to U.S. Bank,[2] that transfer (but not the bank-to-bank transfer of legal title) may be avoidable by virtue of § 544(a)(3).

U.S. Bank's argument that because the execution of the memorandum of foreclosure sale occurred prior to Ms. Mularski's bankruptcy filing, the property was not included in her

---

[2] Mass. Gen. Laws. ch. 244, § 15 provides that following a foreclosure sale,

> a copy of the [foreclosure] notice and an affidavit fully and particularly stating the person's acts or the acts of the person's principal or ward . . . shall be recorded in the registry of deeds for the county or district in which the land lies, with a note of reference thereto on the margin of the record of the mortgage deed if it is recorded in the same registry.

Arguably, prompt compliance with this section would put the world on notice that the foreclosure sale had been consummated, so that the failure to record the foreclosure deed itself might not present difficulties, *see, e.g.*, *Cerrato v. BAC Home Loans Servicing (In re Cerrato)*, 504 B.R. 23, 33 (Bankr. E.D.N.Y. 2014) (transfer of debtor's equity of redemption through foreclosure sale not avoidable under § 544(a)(3), despite the foreclosure deed not having been recorded as of the bankruptcy filing, as the recorded foreclosure judgment and referee's report of sale were sufficient to put bona fide purchaser on notice of transfer). In this case, because *none* of the foreclosure documents were recorded before the filing of the bankruptcy petition, I need not decide *what* documents must be on record to perfect the transfer of an equity of redemption vis-à-vis third parties.

8

bankruptcy estate, while correct, is beside the point. Had Ms. Mularski. accused the bank of violating the automatic stay by recording its foreclosure documents post-petition, the fact that the property was not property of the bankruptcy estate would have indeed been relevant. *See, e.g.*, *In re Grassie*, 293 B.R. 829, 831 (Bankr. D. Mass. 2003). But this adversary proceeding is about the power of a bankruptcy trustee under § 544 to avoid prepetition transfers of a debtor's property which necessarily means property in which the debtor has no "legal or equitable interests . . . as of the commencement of the case" (and therefore does not become estate property under 11 U.S.C. § 541(a)(1)). Such property may be *brought back* into the estate through transfer avoidance. This is recognized by §§ 541(a)(4) and (7), which include as estate property, respectively, avoided transfers preserved for the benefit of the estate under § 551 and interests in property the estate acquires post-petition (which would include, *inter alia*, recoveries for the benefit of the estate under § 550 as a result of avoided transfers). 11 U.S.C. § 541(a)(4), (7).

      Finally, U.S. Bank complains that a ruling in favor of the trustee will force banks to record foreclosure documents immediately after foreclosure sales, which the bank characterizes as an absurd result. But requiring diligence in perfecting one's interest against bona fide purchasers, creditors, or bankruptcy trustees can hardly be called absurd. *Ostrander v. Gardner (In re Millivision, Inc.)*, 474 F.3d 4, 6 (1st Cir. 2007). The very predicament in which the bank finds itself befalls many creditors adversely affected by a bankruptcy filing prior to the perfection of a prepetition transfer. "Congress made its choices long ago by providing estate representatives with hypothetical [bona fide purchaser] status as of the date of case commencement. . . . It is hardly an accident that § 544(a) has been characterized as a 'strong arm power.'" *Ostrander v. Gardner (In re Millivision, Inc.)*, 331 B.R. 515, 523-24 (Bankr. D. Mass. 2005), *aff'd* 474 F.3d 4. The Bank

must look to the legislature for the relief it seeks, and not to the court.[3]

Because the transfer of Ms. Mularski's equity of redemption by foreclosure is avoidable by her trustee under § 544(a)(3) of the Bankruptcy Code, U.S. Bank's motion to dismiss must be denied. A separate order shall enter.

DATED: February 14, 2017               By the Court,

                                                            Melvin S. Hoffman
                                                           United States Bankruptcy Judge

Counsel appearing:   L. Alexandra Hogan, Esq.,
                             Steven Weiss, Esq.
                             Shatz, Schwartz and Fentin, P.C.
                             Springfield, MA
                             for Steven Weiss, Chapter 7 Trustee

                             Andrea V. Lasker, Esq.
                             Harmon Law Offices, P.C.
                             Newton, MA
                             for U.S. Bank, N.A., as Trustee for LSF8 Master Participation Trust

---

[3] For example, the Massachusetts legislature could protect against the outcome in cases such as this by establishing a grace period for recording foreclosure documents that would relate back to the date of the foreclosure sale.